**WARMINSTER FIBERGLASS,**
**Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL**
**BOARD (JORGE), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 2, 1998.
Decided March 13, 1998.
Reargument Denied May 11, 1998.

---

Noreen Maley Piatt, Philadelphia, for petitioner.

Charles A. DiFazio, Philadelphia, for respondent.

Before PELLEGRINI and FRIEDMAN, JJ., and JIULIANTE, Senior Judge.

PELLEGRINI, Judge.

Warminster Fiberglass (Employer) petitions for review of the June 9, 1997 decision and order of the Workers' Compensation Appeal Board (Board) modifying the termination of medical benefits payable to Jose Jorge (Claimant) from December 8, 1992 to May 4, 1995, the date of the Workers' Compensation Judge's (WCJ) order.

Claimant worked as a fabricator for Employer from 1971 until January 7, 1992, when, while at work, he strained his lower back as he was carrying two 40–pound pails of resin. Employer accepted responsibility for Claimant's injury and a notice of compensation payable was issued.

On January 22, 1993, Employer filed a petition to terminate Claimant's workers' compensation benefits alleging that Claimant's work-related disability had ceased as of January 5, 1993, the date on which Claimant was scheduled to return to work. Both Employer and Claimant submitted medical testimony, each presenting opposite views as to whether Claimant had recovered. Claimant submitted medical bills from his treating physician, Dr. George Rodriguez, all of which were incurred after September 14, 1993, totaling $29,112.61. While the termination proceeding was pending on July 18, 1994, Employer filed a utilization review (UR) petition not currently before us, alleging that "[Claimant] has not shown any substantial improvement with said treatment. [Claimant] has been treating since 9/93."

Accepting Employer's medical evidence over that of Claimant's physician and finding Claimant's allegations of unresolved pain and symptomology subsequent to December 8, 1992 as not credible, the WCJ terminated benefits as of December 8, 1992, the date on which Employer's physician opined that Claimant had fully recovered. Though not referring to the UR petition which had been filed by Employer, the WCJ found that all medical expenses incurred by Claimant from his treatment with Dr. Rodriguez had been incurred after the enactment of the 1993 amendments to the Workers' Compensation Act (Act), commonly known as "Act 44".[1] He concluded that "all such treatment occurred after enactment of Act 44 of 1993" so that "[a]ll rights and obligations of the parties regarding such medical bills are now controlled by Section 306(f.1) of the Act."

Claimant appealed to the Board contending that the WCJ's decision was not supported by substantial evidence and that even

---

1. The 1993 amendments to the Workers' Compensation Act commonly known as "Act 44", Act of June 2, 1915, P.L. 736, 306(f.1), *as amended by* the Act of July 2, 1993, P.L. 190, 77 P.S. § 531(6).

if his workers' compensation benefits should be terminated as of December 8, 1992, Employer should nonetheless be liable for the payment of his medical bills through May 4, 1995, the date on which the WCJ's decision was rendered. While the Board found that the WCJ's decision was supported by substantial evidence, it held that Employer was responsible for Claimant's medical bills to May 4, 1995, the circulation date of the WCJ's final order. Employer then filed this appeal.[2]

The underlying issue presented is the effect that Act 44 has on the WCJ's ability to order the payment of medical bills once a UR request has been filed. The WCJ's decision seems to imply that all medical bills must initially go through the UR process once a UR petition has been filed, while the Board, relying on *Stonebraker v. Workmen's Compensation Appeal Board (Seven Springs Farm, Inc.)*, 163 Pa.Cmwlth. 468, 641 A.2d 655 (1994), implies that medical bills must still be paid up until the date of the WCJ's decision regardless of whether or not a UR petition has been filed. Because recently, in *Albert Einstein Medical Center v. Workers' Compensation Appeal Board (Perkins)*, 707 A.2d 611 (Pa.Cmwlth., 1998), we held that *Stonebraker* and other cases requiring payment up until the date of the WCJ's decision have been legislatively superseded by Act 44,[3] it is necessary to examine what procedures are to be used when challenging and requiring payment of medical bills.

## I.

Prior to Act 44, an employer that wished to contest the reasonableness and necessity of medical treatment could file a petition to review medical treatment provided for in the former and now repealed Section 306(f)(2)(ii) of the Act, 77 P.S. § 531(2)(ii). That Section provided, in relevant part:

> The employer shall have the right to petition the department for review of the necessity or frequency of treatment or reasonableness of fees for services provided by a physician or other duly licensed practitioner of the healing arts. Such a petition shall in no event act as supersedeas, and during the pendency of any such petition the employer shall pay all medical bills if the physician or other practitioner of the healing arts files a report or reports as required by subparagraph (I) of paragraph (2) of this subsection.

77 P.S. § 531(2)(ii).

Employer challenged the propriety of the medical bills by filing a petition to review medical treatment with the Bureau of Workers' Compensation, but the filing did not act as a supersedeas to payment of bills.

In order to alleviate the dilemma facing employers, while at the same time insuring that claimants would receive necessary treatment and providers could defend their treatment and right to payment, Act 44 was enacted. Section 306(f.1)[4] of the Act, 77 P.S.

---

2. Our scope of review of a decision of the Board is limited to a determination of whether constitutional rights were violated, errors of law were committed, or whether substantial evidence supports the necessary findings of fact. 2 Pa.C.S. § 704; *Hastings v. Workmen's Compensation Appeal Board (Mastech Construction)*, 667 A.2d 485 (Pa.Cmwlth.1995), *petition for allowance of appeal denied*, 544 Pa. 678, 678 A.2d 367 (1996).

3. In *Einstein*, we held that *Stonebraker* has been "drastically undermined upon enactment of Act 44 and the implementation of the utilization review" process. We explained that because Act 44 was enacted in order to address the same policy concerns as *Stonebraker* (and other similar cases), the extensive and detailed medical cost review system arising out of Act 44 has obviated the need for the protection previously afforded by and has legislatively superseded *Stonebraker*. We reasoned that "we would be directly under-

mining the cost-containment objectives of Act 44 if we were to hold that, despite the rather elaborate procedures delineated in Act 44 ... an employer is nevertheless obligated to subsidize a claimant's previously incurred unreasonable and unnecessary medical expenses up to the date that they are pronounced as such by a WCJ, which could be years after those costs were actually incurred." *Einstein* at 15–16, at ———.

4. Because Section 306(f.1) of the Act suspends an employer's obligation to pay medical bills, it has been suggested that it effectively provided an automatic supersedeas of the type held to be unconstitutional by the United States District Court for the Eastern District of Pennsylvania in *Baksalary v. Smith*, 579 F.Supp. 218 (E.D.Pa. 1984). *See Key v. Workmen's Compensation Appeal Board (Chestnut Hill Hospital)*, 673 A.2d 39 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 546 Pa. 649, 683 A.2d 886 (1996). In

§ 531(6)(i),[5] established a new way for employers to challenge the reasonableness of medical treatment, *C.D.G., Inc. v. Workers' Compensation Appeal Board (McAllister)*, 702 A.2d 873 (Pa.Cmwlth.1997), through a more timely and efficient method that hoped to simultaneously insure that claimants receive needed treatment, and for the first time gave providers a chance to defend their treatment and protect their bills. The process established by Act 44 to review the reasonableness and necessity of medical bills is conducted by Utilization Review Organizations (UROs) comprised of health care providers in the same profession.

Pursuant to the Act and its regulations, any party may seek prospective, concurrent or retrospective UR of medical treatment. 34 Pa.Code § 127.404(a). UROs have the authority to decide only the reasonableness or necessity of the treatment at issue. 34 Pa.Code § 127.406(a). They have no jurisdiction, however, over either the causal relationship between the treatment under review and the employee's work-related injury or the issue of whether the employee is still disabled. 34 Pa.Code § 127.406(b)(1)(2).

Upon receipt of the medical records by the URO or 35 days from the date of notice of assignment, whichever comes first, a request for UR is deemed complete. 34 Pa.Code § 127.465(a). Once the URO has received a completed request for UR, it has 30 days in which to complete its review and render its determination. Section 306(f.1)(6)(ii) of the Act; 34 Pa.Code § 127.465(b). These time constraints help ensure that a request for review of medical treatment will be timely rendered, protecting both the party making the request, as well as the provider and claimant, as the case may be, and ensure that payment for medical treatment need not be suspended for an excessive time period. Where retrospective review is sought, the initial request for UR must be filed within 30 days of receipt of the bill and medical report for the treatment at issue or the right to retrospective review is waived. 34 Pa.Code § 127.404(b).

■ Under Act 44 then, a challenge to the reasonableness and necessity of medical bills is to be raised in a request for UR that will be initially submitted to a URO, not a WCJ. *Florence Mining Co. v. Workmen's Compensation Appeal Board (McGinnis)*, 691 A.2d 984 (Pa.Cmwlth.1997). If the health care provider, employer, employee or insurer disagrees with the determination of the URO, any of those parties may, within 30 days of the URO decision, file an appeal with a WCJ. Section 306(f.1)(6)(iv) of the Act; 34 Pa.Code § 127.551.[6] If, after following the proper procedure for appeal, the UR request reach-

*Baksalary*, the Court considered the constitutionality of the unilateral supersedeas provision of the former Section 413 of the Act and determined it to be unconstitutional because it provided no notice to claimants until after termination of the benefits and provided claimants with no opportunity to introduce any evidence or argument prior to termination. As in *Key*, we do not reach that issue in this case.

5.  Section 306(f.1)(6) of the Act, 77 P.S. § 531(6), sets forth the procedure which must be followed by an employer who wishes to contest the reasonableness and necessity of medical treatment rendered by a health care provider as treatment for a claimant's injury and provides in relevant part:

> (6) Except in those cases in which a workers' compensation judge asks for an opinion from peer review under Section 420, disputes as to reasonableness or necessity of treatment by a health care provider shall be resolved in accordance with the following provisions:
>> (i) The reasonableness or necessity of all treatment provided by a health care provider under this act may be subject to prospective, concurrent or retrospective utilization review at the request of an employe, employer or insurer. The department shall authorize utilization review organizations to perform utilization review under this act. Utilization review of all treatment rendered by a health care provider shall be performed by a provider licensed in the same profession and having the same or similar specialty as that of the provider of the treatment under review. Organizations not authorized by the department may not engage in such utilization review.

77 P.S. § 531(6).

6.  Prior to June 24, 1996, a dissatisfied provider, employer, employee or insurer would have filed a request for reconsideration with the URO. However, the Act of June 24, 1996, P.L. 801, commonly referred to as "Act 57", amended Section 306(f.1)(6)(iv) so that the request for reconsideration has been eliminated and appeals from the initial URO determination are now taken directly to the WCJ. See *Florence, supra*.

es the WCJ stage and the underlying claim has not yet been resolved, the UR petition will be assigned, if possible, to the same WCJ assigned to the underlying claim. 34 Pa. Code § 127.553(b). Of course, when any objecting party fails to timely appeal the URO determination to the WCJ, all parties are then bound by the unappealed URO determination and the WCJ has no authority to alter that determination. *See Florence, supra.*

## II.

Employer contends that because, during the pendency of its termination petition, it had filed a petition for UR, Act 44 controls and the WCJ or the Board have no jurisdiction to order those medical bills paid until its UR petition has been resolved. Complicating the matter here is that while all of the medical bills were incurred after the effective date of Act 44, some may have been received by Employer more than 30 days before its initial request for UR and some within 30 days of or after that request.

■■■ Under Act 44, medical bills can only be challenged through a timely UR request, and once one is filed, the reasonableness and necessity of those medical bills can only be determined by the URO, and the WCJ or the Board have no jurisdiction over the bills until the UR is decided. If no UR request has been filed the WCJ must order that the medical bills be paid promptly either in a proceeding to pay bills or ancillary to a claim, termination or suspension petition. If, however, there is a pending UR request at

the time the WCJ is deciding the case, the WCJ has no authority to order payment up until the time of his or her decision.[7] While having no jurisdiction over the medical bills where a UR request has been filed, the WCJ is not required to delay his or her decision in a claim, suspension or termination petition, *Bloom v. Workmen's Compensation Appeal Board (Keystone Pretzel Bakery)*, 677 A.2d 1314 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 546 Pa. 657, 684 A.2d 558 (1996), but can, as here, render a decision on those petitions acknowledging that all medical bills are subject to UR review.

The more difficult question is whether the WCJ here properly stated that all medical bills at issue here were controlled by Act 44 even though some of those bills may have been untimely challenged. Employer filed its UR petition on July 18, 1994, and any bills received 30 days prior could not be challenged.[8] If there had been a bright line as to what bills were subject to challenge, it could be argued that it would be expeditious for the WCJ to just order payment. However, both because a tribunal should at least initially determine its own jurisdiction, *Shovel Transfer & Storage, Inc. v. Simpson*, 523 Pa. 235, 565 A.2d 1153 (1989), *reversed and remanded on other grounds*, 547 Pa. 210, 689 A.2d 910 (1997), *citing Pennsylvania Railroad Co. v. Pennsylvania Public Utility Commission*, 396 Pa. 34, 152 A.2d 422 (1959), and because there is often a debate as to when bills were received, the URO should make the initial determination as to the

---

7. Unlike a challenge to the reasonableness and necessity of medical treatment that is submitted to the URO and, if appealed, to a WCJ, where unchallenged medical treatment has not been paid or if an employer challenges the reasonableness of the fee for that medical treatment, the procedure is that the provider can petition the Bureau for payment or review of the fee. 34 Pa.Code § 127.251. The provider or insurer then has the right to request a hearing and the matter will be assigned to a hearing officer. 34 Pa.Code § 127.257(a),(b). After the decision of the hearing officer is rendered, any further challenge is taken to this Court. 34 Pa.Code § 127.261.

8. 34 Pa.Code § 127.208(a) requires payments for treatment rendered under the Act to be made

within 30 days of the receipt of the bill and report submitted by the provider. The 30–day period is only tolled where review of the reasonableness or necessity of the treatment is requested during the 30–day period under the UR provisions of Subchapter C (relating to medical treatment review). 34 Pa.Code § 127.208(e). However, 34 Pa.Code § 127.404(b) contains an exception to this 30–day limitation, stating that where "the insurer is contesting liability for the underlying claim, the 30 days in which to request retrospective [utilization review] is tolled pending an acceptance or determination of liability." While not clear, this provision does not apply to termination petitions because the terms "acceptance" and "determination", when taken together, apply only to claim petitions.

scope of each UR request—specifically what bills are covered.[9]

In conclusion, Act 44 sets forth a procedure that supplants the old requirement that medical bills were to be paid up until the time of the WCJ's decision. Moreover, when there is an outstanding request for UR and an appeal has not been taken or has not yet been assigned to the WCJ, he or she has no authority to determine what bills are included in that request or the reasonableness and necessity of the medical treatment at issue. Accordingly, we vacate the Board's decision ordering payment of the medical bills up until the WCJ's decision and reinstate the WCJ's decision.

### ORDER

And now, this 13th day of March, 1998, the decision and order of the Workers' Compensation Appeal Board, No. A95–1993, dated June 9, 1997, is vacated and the decision of the WCJ reinstated.

---

**9.** If the URO determines that the medical treatment at issue is reasonable and necessary, the insurer shall pay for the treatment. Once there has been a determination that the treatment is reasonable and necessary, filing a petition for review before a WCJ does not further suspend its obligation to pay for treatment. 34 Pa.Code § 127.208(f). If an insurer refuses to pay medical bills that are subsequently determined to be reasonable and necessary by a URO, it does so at its own risk, and penalties will apply in addition to the amount of the medical bills ordered to be paid by the URO.